IN THE UNITED STATES DISTRICT COURT
               FOR THE NORTHERN DISTRICT OF ILLINOIS
                          EASTERN DIVISION

DAGOBERTO FAVILA, et al.,        )
                                 )
               Plaintiffs,       )
                                 )
    v.                           )    No. 09 C 3265
                                 )
CITY OF CHICAGO, et al.,         )
                                 )
               Defendants.       )

                  MEMORANDUM OPINION AND ORDER

In conformity with the schedule established during the April 6, 2011 conference during which this Court and the parties' counsel discussed their jointly-proposed final pretrial order ("FPTO") and this Court then entered the FPTO, each side has tendered a set of motions in limine[1] and, in turn, responded to the other's motions in limine.[2] This memorandum opinion and order will deal with both sides' submissions.

                  Plaintiffs' Motions in Limine

Although P. Motion 1 seeks the typical noncontroversial order excluding witnesses from the courtroom during the trial (such exclusion would of course cease to operate when a witness has testified and will no longer be called to the stand), defendants' response is puzzling. After saying they "have no

---

[1] Those motions will be referred to here as "P. Motion" and "D. Motion." As for defense counsel's repeated misspelling ("liminie" instead of "limine") in their submissions, no penalty will be imposed for their having flunked Latin 101.

[2] Those responses will be cited here as "P. Resp." and "D. Resp."

objection" to the motion (D. Resp. 1 to P. Motion 1),[3] defense counsel inexplicably asks that the motion be denied. Instead it is of course granted, as qualified by the two limitations referred to in n.3

P. Motion 2 seeks "to bar Defendants from introducing evidence regarding the Plaintiffs' or any witnesses' immigration or citizenship status." Defense counsel's opposition reflects serious discredit on themselves.

What they say, before going on to elaborate, is that "Plaintiffs have directly placed their immigration status at issue" (D. Resp. 1 to P. Motion 2). On that score it is quite true that plaintiffs' First Amended Complaint at Law ("Complaint") ¶¶1 and 2 assert that both plaintiffs--Dagoberto Favila ("Favila") and Emma Estevane ("Estevane")--are United States citizens when they are in fact noncitizens. But those allegations, though untrue, could not be less relevant to plaintiffs' Section 1983 claims or to the defenses of the City of Chicago ("City") and its codefendant Chicago Police Officers.[4]

---

[3] D. Resp. 1 does say that the order should not operate to exclude the parties themselves, but that is of course the universally followed rule, so that such a qualification is understood. And defendants' request that the exclusion be reciprocal (id.) is really unnecessary, because the motion itself speaks of "excluding all witnesses," not just defendants'.

[4] All of us who are professionals in the practice of law know that it is lawyers and not their clients who prepare pleadings, and--as is true in all instances in the federal practice, save those limited situations where verification is

2

This Court's copy of the Constitution does not limit the applicability of the Fourteenth Amendment, or the provisions of the Bill of Rights that it incorporates, to citizens alone. It is worth noting that Instruction 1.01 of the Seventh Circuit's Pattern Jury Instructions, given in every civil trial, states in part:

> You should not be influenced by any person's race, color, religion, national ancestry, or sex.

And Instruction 1.14, speaking of prior inconsistent statements that may come before the jury, says in part (emphasis added):

> [Y]ou should consider whether it was simply an innocent error or an intentional falsehood and <u>whether it concerns an important or an unimportant detail</u>.

As defense counsel would have it, plaintiffs' status as citizens or immigrants is critical because "it implicates their credibility and ability to testify truthfully" (D. Resp. 2 to P. Motion 2). And for that jingoistic proposition counsel cite <u>Hawthorne Partners v. AT&T Tech., Inc.</u>, 831 F.Supp. 1398, 1400 (N.D. Ill. 1993), which--quite apart from its nonprecedential status in any event--says nothing of the sort.

This Court will not be a party to allowing defense counsel to take such a cheap shot at plaintiffs or other witnesses who

---

necessary--the Complaint here was signed by plaintiffs' counsel and not by plaintiffs themselves. This is not to say that a party may shirk responsibility for what is alleged on his or her behalf, but the ensuing discussion in the text reveals just how meretricious defense counsel's position is on this issue.

are noncitizens. As to the latter, if their status as immigrants has some relevance to their testimony (as it clearly does <u>not</u> as to plaintiffs themselves), this Court may consider the issue again at trial. But for now P. Motion 2 is granted unequivocally, both because of the constraint imposed by Fed. R. Evid. ("Evid. R.") 404(b) and under the balancing called for by Evid. R. 403.[5]

P. Motion 3 seeks to allow plaintiffs "to call non-party Chicago police officers and employees as adverse witnesses." Again defendants resist, and once again their position--properly understood--is without merit.

There is a tendency among many lawyers to use the term "adverse witnesses," which carries the implication that some level of hostility on the witnesses' part must be demonstrated by the interrogating party. But the actual language of Evid. R. 611(c), which permits the use of leading questions, actually speaks instead of "a hostile witness, an adverse party, or a witness identified with an adverse party."

That last of the three categories plainly embraces City employees such as its police officers in a case such as this one. That is both the approach and the holding adopted by our Court of

---

[5] In this instance the issue of citizenship or noncitizenship is not only irrelevant, but it has no probative force whatever and would clearly be unfairly prejudicial to plaintiffs.

4

Appeals three decades back in Ellis v. City of Chicago, 667 F.2d 606, 612-13 (7th Cir. 1981)--a case that, like this one, asserted a violation of constitutional rights actionable under 42 U.S.C. §1983 ("Section 1983") and targeted City and a police officer as defendants, with the witnesses at issue being fellow officers. What Judge Cudahy said for the Ellis panel applies here with equal force, and defense counsel's effort to distinguish that case is unavailing.

To be sure, defense counsel cannot be faulted entirely here, because they may have been led astray by plaintiffs' counsel's use of the term "adverse witness." But both sides' counsel's usage in that respect does not change the analysis, for the real test for leading questions under the Rule is whether the other officers are "identified with an adverse party" in this case--and they are. Hence P. Motion 3 is granted as well.

P. Motion 4 at 4 asks to "preclud[e] defendants from testifying, arguing and/or implying that Favila and/or Estevane possessed a weapon or 'contraband.'" That motion is puzzling, because D. Resp. 1 to P. Motion 4 says that "whether Plaintiff Dagoberto Favila possessed any contraband or weapon is a dispositive issue" and goes on (id.) to charge plaintiffs' counsel with "exaggeration of the facts [that] drastically alter this case by slanting the facts in Plaintiffs' favor."

Although defense counsel follow that statement with a

5

detailed recital of what they refer to as "the key facts in this case" (id. at 2), that description regrettably does not pose the issues in dispute between the parties in a way that allows this Court to rule on the motion in an informed manner. What would seem most useful in that respect would be an in-person oral presentation by both sides' counsel, during which this Court can pose questions that would bear on the admissibility or inadmissibility of the challenged areas of evidence (or nonevidence). Accordingly P. Motion 4 is deferred.

P. Motion 5 asks that defendants be precluded "from introducing statements or arguing that there was 'armed security' or 'armed guards' at 2914 N. Springfield." As with the motion just discussed, counsel for both parties have the obvious advantage derived from having lived through the discovery process, as this Court does not. Again it makes sense to defer ruling on P. Motion 5 until the matter can be explored further in the manner discussed above as to P. Motion 4.

P. Motion 6 seeks to bar "[a]ny references to evidence that guns and drugs were recovered from 2914 North Springfield." It is undisputed that the search warrant possessed by the police officers specifically listed <u>that</u> property, while both plaintiffs lived not there, but next door at 2912 North Springfield.

According to P. Motion 6 at 10 (emphasis added), "[t]he claims asserted by plaintiffs occurred well <u>before</u> the police

6

officers traveled to 2914 N. Springfield," and the "police officers traveled to 2914 N. Springfield after leaving 2912 N. Springfield."[6] Yet defense counsel oppose the motion by repeating in a number of different ways that the "two situations are inextricably linked" (D. Resp. 4 to P. Motion 6) and the like, so that what they found at the 2914 property when executing the search warrant somehow bears on their having focused on the wrong property to begin with.[7]

Whether defendants violated plaintiffs' constitutional rights by their conduct is of course a function of what they did (or perhaps what they believed as to plaintiffs) when they acted, an issue to be more finely tuned at trial. Those matters cannot be bootstrapped by the consequences of their later (or even simultaneous) search of the 2914 property. It is this Court's understanding that no evidence at all links plaintiffs to the fruits of the search at 2914 North Springfield. P. Motion 6 is

---

[6] D. Resp. 3 to P. Motion 6 disputes that description by asserting that "the situations occurred simultaneously." But defendants clearly fare no better on the irrelevancy front even if they are correct in that respect.

[7] While defense counsel accuse plaintiffs' counsel of distorting the facts, their P. Motion 6 Resp. 4 says "the sole reason Defendants went to 2912/2914 N. Springfield on September 24, 2008 is because they were executing a search warrant for weapons and narcotics at 2914 North Springfield." Any such coupling of the two properties as though they were a horse race entry (1 and 1A) is unacceptable, as though the specification of the other property (2914) in the search warrant gave the officers free license to do what they wanted in plaintiffs' next-door property (2912).

7

granted.

Finally, P. Motion 7 asks to bar "[a]ny reference that the individual police officers will be responsible for the payment of compensatory damages." Although defense counsel mysteriously caption their responsive statement as "Defendants' Response to Plaintiffs' Motion in Liminie [sic] No. 7 To Allow Plaintiffs To Call Adverse Witnesses," both that caption and the opening paragraph of the response have carelessly copied the same opening portions of their already-ruled-upon response to P. Motion 3. Defense counsel clearly did not proofread their submission before filing it, but that error can be disregarded because their substantive argument does respond to P. Motion 7.

On the merits of P. Motion 7, needless to say, no one wants to take any step that might encourage jurors to award excessive damages because they have been made aware of a deeper pocket (that of City) to look to. At the same time, the existence of a prayer for punitive damages may call for an appropriate instruction in that respect. Meanwhile, P. Motion 7, as it is actually framed, is granted--this Court expects to be silent on the subject of responsibility for compensatory damages unless developments at trial were to counsel otherwise.

## Defendants' Motions in Limine

D. Motion 1 is really the mirror image of the just-discussed P. Motion 7: It seeks to bar plaintiffs from arguing that

8

compensatory damages will be paid by City. Plaintiffs' counsel respond that they do not intend any such argument unless defendants "open the door" to the indemnification issue by any argument or implication "that it would create a hardship on the individual defendants to pay a monetary award." That is sound, and D. Motion 1 is granted, subject to that possible exception.

D. Motion 2 seeks "to bar evidence that the City of Chicago failed to discipline the individual defendant officers for any alleged misconduct." Again plaintiffs have no quarrel with that, provided that defendants do not try to shoehorn the subject into the case by adverting to the absence of any disciplinary imposition. So D. Motion 2 is granted, again subject to that possible exception.

D. Motion 3 asks to preclude any reference to prior disciplinary records of the defendant officers or other nonparty police witnesses. Plaintiffs disclaim any intention to do so, and D. Motion 3 is granted.

D. Motion 4 asks that this Court "bar any argument or testimony regarding the negligent or improper training, monitoring, control, discipline or hiring of police officers, including defendants." On that score plaintiffs' counsel disclaim any intention to advance a Monell-type claim, so D. Motion 4 is granted as well (unless, of course, defendants themselves were to bring the matter into play at trial).

9

D. Motion 5 asks "to bar improper argument or innuendo that plaintiffs seek to 'send a message' to the City or the police." That request is flawed as it is framed, because the word "improper" begs the question.

As chance would have it, this Court dealt with and rejected just such a motion almost exactly two months ago in <u>Hudson v. City of Chicago</u>, No. 09 C 1454, 2011 WL 1303303, at *2 (Mar. 31). D. Motion 5 is denied for the same reasons that were stated in <u>Hudson</u>.

D. Motion 6 seeks "to bar any testimony or argument that defendant officers or others conspired to cover up this incident." Just as with D. Motion 5, this Court's just-referred-to memorandum opinion and order in the <u>Hudson</u> case considered and rejected a like motion (that was D. Motion 1 in <u>Hudson</u>). This Court sees no reason to reinvent the wheel. For the reasons stated both in <u>Hudson</u> and in the <u>Galvan v. Norberg</u> opinion cited there, D. Motion 6 is denied.[8]

D. Motion 7 asks "to bar evidence regarding 'Code of Silence,' 'Blue Wall' or any claim of a cover-up." This appears to be further proof that counsel representing City and its police officers in Section 1983 cases have a stable of boilerplate contentions that they wheel out in every case. Once more a

---

[8] This denial is without prejudice to the reassertion of any objections on that score in the context of specific evidence when proffered at trial.

comparable motion was advanced and rejected in <u>Hudson</u> and <u>Galvan</u>, and it is denied here too (but on the same without-prejudice basis as just stated in n.8 regarding D. Motion 6).

D. Motion 8 seeks to preclude "evidence of lay opinions regarding physical or mental diagnosis." Plaintiffs respond by specifying that they will proffer their own testimony on those subjects and by disavowing any intention to offer expert opinions. Because D. Motion 8 appears to impinge inappropriately on plaintiffs' anticipated testimony, the motion is denied.

D. Motion 9 moves to different ground, seeking "to bar any evidence, testimony, or reference to any violation of Chicago Police Department general orders, regulations or directives"-- still another of the standard objections that City's counsel appear to put forward in every case. It is of course true that any such claimed violations may not implicate federal constitutional rights cognizable under Section 1983, but just as this Court held in its <u>Galvan</u> opinion, D. Motion 9 is denied as overbroad.

D. Motion 10 moves into more case-specific territory, asking to preclude testimony of Christopher Hansen, Shelia Gara and Mario Ibanez. Plaintiffs' counsel respond correctly that this subject was discussed and dealt with during the pretrial conference that resulted in approval of the FPTO. D. Motion 10 is therefore denied, with a suggestion that defense counsel

11

confer with plaintiffs' counsel as to the possible resolution of some proposals made by the latter in their response.

D. Motion 11 seeks "to bar the introduction of the 911 call made by plaintiff Emma Estevane." In part that subject was dealt with earlier at the conference that resulted in approval of the FPTO. That discussion resulted in this Court's rejection of defendants' objection as to admissibility of the 911 recording. Defendants' renewed objections are without merit, and D. Motion 11 is also denied.

D. Motion 12 targets the possible introduction of the photographic lineups of officers Vega and Merck and Sergeant DeJesus contained in the IPRA file. As plaintiffs' counsel respond in part:

> Essentially, defendants ask this Court to suppress the out of court identification of the individual defendants.

But such identification of the defendants targeted here is an integral aspect of the case for the reasons stated in plaintiffs' response. Defendants' objections are unpersuasive, and D. Motion 12 is denied.

D. Motion 13 asks to preclude "evidence of the IPRA investigation into this matter and the nature and quality of the investigation." Plaintiffs' response disclaims any "inten[tion] to argue or attempt to elicit evidence as to the quality or nature of the IPRA investigation"--in part the response explains

plaintiffs' counsel's understanding that the investigation is still ongoing, with no findings or recommendations having been made.

Although plaintiffs' counsel continues by stating the intention to call investigator Jessica Sanchez as a witness to the lineups and the sworn statements provided by the individual defendants, this Court sees no reason to refer to the IPRA investigation "to explain why investigator Sanchez is conducting lineups and taking the statements from the officers." So long as the testimony can go in (a matter on which the parties' counsel should confer), D. Motion 13 is granted.

Finally, D. Motion 14 asks "to dismiss defendant Officers Vega, Carvajal, Lopez, Magallon, Williams and Merck." But plaintiffs' response correctly recharacterizes the motion as one seeking summary judgment, because it is sought to be supported by adducing various evidentiary materials. Thus D. Motion 14, unlike the other motions, is not one that challenges types or items of evidence as inadmissible (the normal role of a motion in limine)--see, e.g., Luce v. United States, 469 U.S. 38, 40 n.2 (1984) and Am. Int'l Adjustment Co. v. Galvin, 86 F.3d 1455, 1463 (7th Cir. 1996).

Even apart from the fact that this Court denied defendants' summary judgment motion on March 23, 2011, so that the current motion attempts to take a second bite at that apple, the proper

way to raise the issues that defendants advance is to let the matter play out at trial based on admissible evidence, with defendants then free to present a Fed. R. Civ. P. 50(a) motion at the conclusion of plaintiffs' case in chief if such a motion is justified. For now, then, D. Motion 14 is denied.

## Conclusion

For the reasons stated in this memorandum opinion and order:

1. P. Motions 1, 2, 3, 6 and 7 (all part of Dkt. 99) are granted.

2. P. Motions 4 and 5 (also part of Dkt. 99) are deferred.

3. D. Motions 1 (Dkt. 84), 2 (Dkt. 85), 3 (Dkt. 86), 4 (Dkt. 87) and 13 (Dkt. 96) are granted.

4. D. Motions 5 (Dkt. 88), 6 (Dkt. 89), 7 (Dkt. 90), 8 (Dkt. 91), 9 (Dkt. 92), 10 (Dkt. 93), 11 (Dkt. 94), 12 (Dkt. 95) and 14 (Dkt. 97) are denied.

As indicated earlier, some of those rulings may perhaps be revisited at the time of trial if reraised by counsel in the context of the evidentiary record as then developed. In that sense, those rulings may be viewed as conditional.

_____
Milton I. Shadur
Senior United States District Judge

Date: June 1, 2011